# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF CALIFORNIA
# SAN JOSE DIVISION

| | |
|---|---|
| CECIL EUGENE SHAW,<br><br>　　　　Plaintiff,<br><br>　v.<br><br>FIVE M, LLC, et al.,<br><br>　　　　Defendants. | Case No. 16-cv-03955-BLF<br><br>**ORDER GRANTING APPLICATION FOR DEFAULT JUDGMENT BY THE COURT**<br><br>[Re: ECF 18] |

Plaintiff Cecil Eugene Shaw ("Shaw") brings this Application for Default Judgment by the Court against Defendants Five M, LLC ("Five M") and Varunya Suriyachaiporn[1] d/b/a Orchid Thai Cuisine ("Orchid Thai") (collectively, "Defendants"). *See generally* Mem. P. & A. ISO Appl. Default J. ("Mem."), ECF 18-1. On August 15, 2016, the court clerk entered default against Five M. ECF 11. On August 22, 2016, the court clerk entered default against Orchid Thai. ECF 16. Defendants have not filed responses with the Court.

The Court held a hearing on the present motion on February 23, 2017. For the reasons outlined below, the Court GRANTS Plaintiff's motion, and awards statutory damages, attorneys' fees, and litigation costs.

**I.   BACKGROUND**

Shaw is a California resident with physical disabilities, who suffers from debilitating back and hip pain. Compl. ¶ 1, ECF 1; Ex. 2 ISO Pl.'s Application for Default Judgment ¶ 2, ECF 18-5 (hereinafter "Shaw Decl."). He uses a wheelchair for mobility. Compl. ¶ 1. Defendant Five M has been the owner of the building and/or parcel located at 209 S. Main St., Milpitas, California

---

[1] Varunya Suriyachaiporn is the owner of Orchid Thai. Compl.

since at least August 2014. *Id.* ¶ 2–3. Defendant Orchid Thai was the business owner of Orchid Thai Cuisine located at 209 S. Main St., Milpitas, California in August 2014.[2] *Id.* ¶ 4. Shaw visited Orchid in August 2014. *Id.* ¶ 63; Shaw Decl. ¶ 3. During his visit, Shaw could not find any compliant accessible parking spaces, path of travel, dining tables, or restroom for use by persons with disabilities. Compl. ¶¶ 11–62.

On July 14, 2016, Shaw filed a complaint pursuant to Title III of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12101, *et seq.* and the California Unruh Civil Rights Act (the "Unruh Act"). *See generally* Compl. The complaint seeks an award of injunctive relief, statutory damages, attorneys' fees, and costs. *Id.* at 15.

The Court issued a summons for Defendants on July 14, 2016. ECF 6. On July 19, 2016, a registered process server personally served Five M by providing a copy of the summons and the complaint to Rita Minnis, the person authorized to accept service of process on behalf of Five M. ECF 7. On July 21, 2016, a registered process server personally served Varunya Suriyachaiporn with a copy of the summons and the complaint. ECF 8.

On August 12 and 18, 2016, Shaw requested that the court clerk enter default against Five M and Orchid Thai, respectively.[3] ECF 9, 13. The clerk entered default against Defendants on July 20, 2016 and August 22, 2016. ECF 11, 16. On December 7, 2016, Shaw filed the present motion for default judgment. *See generally* Mem.

## II. LEGAL STANDARD

Pursuant to Federal Rule of Civil Procedure 55(b), the Court may enter default judgment against a defendant who has failed to plead or otherwise defend an action. "The district court's decision whether to enter a default judgment is a discretionary one." *Aldabe v. Aldabe*, 616 F. 2d 1089, 1092 (9th Cir. 1980).

In exercising its discretion to enter default judgment, a district court considers seven factors set forth by the Ninth Circuit in *Eitel v. McCool*, 782 F.2d 1470, 1471–72 (9th Cir. 1986)

---

[2] At the hearing on this motion, Plaintiff's counsel informed the Court that Orchid Thai is no longer located at this address.
[3] The Court notes that Shaw first requested that the court clerk enter default against Orchid Thai on August 12, 2016. ECF 10. The clerk declined to enter default at that time. ECF 12.

("*Eitel* factors"): (1) the possibility of prejudice to the plaintiff; (2) the merits of plaintiff's substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at stake in the action; (5) the possibility of dispute concerning material facts; (6) whether default was due to excusable neglect; and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits. In considering these factors after a clerk's entry of default, the court takes all well-pleaded factual allegations in the complaint as true, except those with regard to damages. *Televideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987). The Court may, in its discretion, consider competent evidence and other papers submitted with a motion for default judgment to determine damages. *Id.*

## III.  DISCUSSION

Before discussing the *Eitel* factors, the Court notes that on default, the Court is required to assume liability as pled. Had Defendant participated in this litigation, the result of this case may very well have been different.

### A.  Service of Process

When a plaintiff requests default judgment, the court must first assess whether the defendant was properly served with notice of the action. *See, e.g.*, *Solis v. Cardiografix*, No. 12–cv–01485, 2012 WL 3638548, at *2 (N.D. Cal. Aug. 22, 2012). Under Federal Rule of Civil Procedure 4(h)(1)(B), a domestic corporation may be served "by delivering a copy of the summons and the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). In the alternative, Rule 4 provides that service on a corporation may be effectuated in accordance with state law. *See* Fed. R. Civ. P. 4(e)(1), (h)(1)(A).

Section 416.10 of the California Code of Civil Procedure provides that a corporation may be served by "delivering a copy of the summons and the complaint . . . [t]o the person designated as agent for service of process [or] [t]o the president, chief executive officer, or other head of a corporation, a vice president, a secretary or assistant secretary, a treasurer or assistant treasurer, a controller or chief financial officer, a general manager or person authorized by the corporation to receive service of process." Cal. Code Civ. Proc. § 416.10. California law also permits

1  substituted service on a person to be served pursuant to Section 416.10 "by leaving a copy of the
2  summons and the complaint during usual office hours in his or her office . . . with the person who
3  is apparently in charge thereof." Cal. Code Civ. Proc. § 415.20(a). Before resorting to substituted
4  service, however, a plaintiff must first make reasonably diligent (*i.e.*, two or three) attempts at
5  personal service. *Bein v. Brechtel–Jochim Group, Inc.*, 6 Cal. App. 4th 1387, 1390 (1992).

6  A process server for Shaw personally served a copy of the summons and the complaint on
7  Rita Minnis, Five M's agent for service of process. ECF 7. Likewise, a process server for Shaw
8  personally served a copy of the summons and the complaint on Varunya Suriyachaiporn, the
9  owner of Orchid Thai. ECF 8. This constitutes proper service on both Defendants. *See* Fed. R.
10 Civ. P. 4(e)(1) (providing for service "pursuant to the law of the state in which the district court is
11 located"); Cal. Code Civ. P § 416.10(a), (b) (providing that a summons and complaint may be
12 served on a corporation by delivering a copy of the documents to the "person designated as "agent
13 for the service of process").

### B.     *Eitel* Factors

#### i.     Factor One: Possibility of Prejudice to the Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. Without entry of default, Shaw would have no other means of recourse against Defendants for the damages caused by their conduct. Mot. 6. Accordingly, the first factor favors entry of default judgment. *See, e.g.*, *Wilamette Green Innovation Ctr., LLC v. Quartis Capital Partners*, No. 14-cv-00848, 2014 WL 5281039, at *6 (N.D. Cal. Jan. 21, 2014) (citations omitted) ("Denying a plaintiff a means of recourse is by itself sufficient to meet the burden posed by this factor.").

#### ii.    Factors Two and Three: Merits of Plaintiff's Substantive Claims and the Sufficiency of the Complaint

The Court considers the second and third *Eitel* factors—concerning the merits of Avast's substantive claims and the sufficiency of its complaint—together because of the relatedness of the inquiries. In analyzing these factors, the Court accepts as true all well-pleaded allegations regarding liability. *See, e.g.*, *HICA Educ. Loan Corp. v. Warne*, No. 11-cv-04287, 2012 WL

4

1156402, at *2 (N.D. Cal. Apr. 6, 2012).

Title III of the ADA prohibits discrimination by public accommodations. It provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). Shaw alleges that Defendants own, operate, and/or leases the building at issue. Compl. ¶¶ 2–5. Defendants are therefore liable for violating the ADA if Shaw shows that he has suffered discrimination at the location due to his disability. Discrimination under Title III includes "a failure to remove architectural barriers . . . in existing facilities . . . where such removal is readily achievable." 42 U.S.C. § 12182(b)(2)(A)(iv). The term "readily achievable" means "easily accomplishable and able to be carried out without much difficulty or expense." *Id.* § 12181(9).

The Court concludes that Shaw has adequately alleged an ADA violation by showing that (1) he is disabled within the meaning of the ADA[4]; (2) Defendants are private entities that own, lease, and/or operate a place of public accommodation[5]; and (3) he was denied public accommodations—an accessible parking space, path of travel, dining tables, and restroom—by the Defendants because of his disability. *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 945 (9th Cir. 2011); *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 730 (9th Cir. 2007); *see* Compl. ¶¶ 10–62. Moreover, Shaw has adequately alleged that the violations are easily removed without much difficulty or expense. Compl. ¶ 66.

Because a violation of the ADA constitutes a *per se* violation of the Unruh Act, the Court also concludes that Shaw properly states a claim under the Unruh Civil Rights Act. *See* Cal. Civ. Code § 51(f); *Lentini v. Cal. Ctr. For the Arts, Escondido*, 370 F.3d 837, 847 (9th Cir. 2004) ("[A] violation of the ADA is, per se, a violation of the Unruh Act.")

---

[4] Shaw is physically disabled and cannot walk. Compl. ¶ 1; Mem. 4. He is thus "disabled" within the meaning of the ADA. *See* 42 U.S.C. § 12102(1), (2) (defining "disability" as a "physical or mental impairment that substantially limits one or more major life activities such as seeing or walking").
[5] "[A] restaurant, bar, or other establishment serving food or drink" is a public accommodation as defined by 42 U.S.C. § 12181(7)(B).

### iii. Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in the litigation. *BMW of North Am., LLC v. Zahra*, Case No. 15-cv-2924, 2016 WL 215983, at *4 (N.D. Cal. Jan. 19, 2016). When the amount is substantial or unreasonable, default judgment is discouraged. *Id.* Here, Shaw seeks a judgment in the amount of $4,000 in statutory damages under the Unruh Civil Rights Act and $4,625 in attorneys' fees and costs. Mot. 11, 13; Ex. 1 ISO Pl.'s Application for Default Judgment ¶ 5, ECF 18-4 (hereinafter "Potter Decl."). These amounts are far less than the amount sought in *Eitel*—$2.9 million—and serves to sway this factor in favor of granting Plaintiff's motion. *Eitel*, 782 F.2d at 1472.

### iv. Factors Five and Six: The Possibility of a Factual Dispute or Excusable Neglect

Under the fifth and sixth *Eitel* factors, the Court considers where there is the possibility of a factual dispute over any material fact and whether Defendants failure to respond may have resulted from excusable neglect. *BMW*, 2016 WL 215983, at *4. As to the former, Shaw served Defendants with the complaint. ECF 7, 8. There is no dispute of material fact because Defendants have not responded and upon an entry of default by the Clerk, the factual allegations of the complaint related to liability are taken as true. As to the latter, there is nothing to suggest that there was been a technical error or excusable neglect on Defendants' behalf. Thus, both factors five and six weigh in favor of granting default judgment.

### v. Factor Seven: Policy Favoring Decision on the Merits

Although federal policy favors decisions on the merits, Rule 55(b)(2) permits entry of default judgment in situations, such as this, where a defendant refuses to litigate. *J & J Sports Prods., Inc. v. Deleon*, No. 5:13-CV-02030, 2014 WL 121711, at *2 (N.D. Cal. Jan. 13, 2014). Therefore, this general policy is outweighed by the more specific considerations in this case, and the seventh *Eitel* factor weighs in favor of default.

### vi. Summary

After considering all seven *Eitel* factors, the Court finds default judgment is warranted and GRANTS Shaw's motion for default judgment on all of its claims.

### C. Relief Sought

Shaw seeks statutory damages, injunctive relief, attorneys' fees, and costs. *See* Mot. 2.

#### i. Injunctive Relief

At the hearing on this motion, Plaintiff indicated that Orchid Thai has vacated the premises at issue and relocated. Plaintiff conceded that this would "tend to eliminate the Court's power to issue an injunction." The Court agrees and declines to issue an injunction because Plaintiff cannot demonstrate an ongoing business that is not complying with the ADA.

#### ii. Statutory Damages

Because the Unruh Civil Rights Act provides for a minimum statutory damages award of $4,000.00 for each occasion an individual is denied equal access to an establishment covered by the Unruh Act, the Court finds that Shaw is entitled to a total of $4,000.00 in statutory damages for his documented visit to Orchid Thai. *See* Cal. Civ. Code § 52(a).

#### iii. Attorneys' Fees and Costs

Plaintiff seeks to recover $4,625 in attorneys' fees and litigation costs. Mem. 2. A court may, in its discretion, award attorneys' fees and litigation expenses, including expert witness fees, to the prevailing party in a discrimination action. 42 U.S.C. § 12205; Cal. Civ. Code § 52(a). In calculating awards for attorneys' fees, courts use "the 'lodestar' method, and the amount of that fee must be determined on the facts of each case." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 978 (9th Cir. 2008) (quoting *Ferland v. Conrad Credit Corp.*, 244 F.3d 1145, 1149 n.4 (9th Cir. 2001) (internal quotation marks and citations omitted); *see also Hensley v. Eckerhart*, 461 U.S. 424, 429 (1983). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F.3d 359, 363 (9th Cir. 1996) *opinion amended on denial of reh'g*, 108 F.3d 981 (9th Cir. 1997). The moving party bears the burden of providing relevant documentation demonstrating the reasonableness of the hours spent on the litigation. *Hensley*, 461 U.S. at 433. In the absence of adequate documentation supporting the number of hours expended on the lawsuit, "the district court may reduce the award accordingly." *Id.* "The district court also should exclude from this initial [lodestar] calculation hours that were not 'reasonably expended.'" *Id.* at

434 (quoting S. Rep. No. 94-1011, p. 6 (1976)).  When determining the reasonable hourly rate, the court must weigh the "experience, skill, and reputation of the attorney requesting fees," and compare the requested rates to prevailing market rates.  *Chalmers v. City of Los Angeles,* 796 F.2d 1205, 1210 (9th Cir. 1986) *opinion amended on denial of reh'g*, 808 F.2d 1373 (9th Cir. 1987); *see also Blum v. Stenson*, 465 U.S. 886, 886 (1984).  Once calculated, the lodestar amount, which is presumptively reasonable, may be further adjusted based on other factors not already subsumed in the initial lodestar calculation.  *Morales*, 96 F.3d at 363–64, 363 nn.3–4 (identifying factors) (citing *Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir. 1975)).

Plaintiff's counsel declares that he incurred $4,165 in attorneys' fees for a total of 9.8 hours worked.  Potter Decl. ¶ 5.  Under the lodestar analysis, the Court must first determine whether counsel's rates are reasonable, as determined by "the prevailing market rates in the relevant community." *Blum*, 465 U.S. at 886.  The market rates used in this comparison should pertain to attorneys with similar "skill, experience, and reputation" to the moving attorneys.  *Chalmers*, 796 F.2d at 1211(citing *Blum*, 465 U.S. at 895 n.11).  Second, the Court must examine whether the hours expended on this litigation are reasonable.

As to the former, the Court finds that $425 per hour is a reasonable rate in light of the attorney's skill and experience.  Potter Decl. ¶ 6 (citing 23 years of experience); *id.* ¶¶ 7–8; *In re LinkedIn User Privacy Litig.*, 309 F.R.D. 573, 591–92 (N.D. Cal. 2015) ("In the Bay Area, 'reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.'").  The Court also finds the number of hours expended reasonable in light of the work performed by the attorney.  Potter Decl. ¶ 5( declaring that he discussed the case with Shaw and developed the intake notes; conducted a preliminary site inspection of the real property at issue; conducted research of public records to determine the identities of the business owner and owner of the real property; drafted the complaint; reviewed and executed the Request for Entry of Default; and drafted the motion at issue).

Plaintiff also seeks to recover $460 in filing fees and service costs. Potter Decl. ¶5.  The fees are reasonable and the Court will award them.

**IV.   ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Plaintiff's motion for default judgment is GRANTED.

2. Defendants are in default.

3. Plaintiff is awarded judgment against Defendants. It is HEREBY ORDERED that Plaintiff shall recover from Defendants (1) $4,000 in statutory damages and (2) the sum of $4,625 in attorneys' fees and costs, for a total of $8,625.

Dated: February 27, 2017

_____
BETH LABSON FREEMAN
United States District Judge